T. Ray Guy, *pro hac vice*
Texas Bar No. 08648500
ray.guy@weil.com
Margaret Hope Allen, *pro hac vice*
Texas Bar No. 24045397
margaret.allen@weil.com
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas  75201
(214) 746-7700 (Telephone)
(214) 746-7777 (Facsimile)

Randi W. Singer (RS-6342)
randi.singer@weil.com
Heather R. Solow (HS-8680)
heather.solow@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
(212) 310-8000 (Telephone)
(212) 310-8007 (Facsimile)

Attorneys For Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER M. WILLIAMS, in his capacity as Shareholders' Representative, <br><br> Plaintiff, <br><br> vs. <br><br> SILVER POINT CAPITAL FUND, L.P. and SP SAGE LLC, <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> :     Index No. 09-CV-2359-PAC |

**DEFENDANTS SILVER POINT CAPITAL FUND, L.P.'S AND
SP SAGE LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
<u>FOR PARTIAL DISMISSAL OF PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

I.      PRELIMINARY STATEMENT ...................................................................... 1

II.     STATEMENT OF FACTS .......................................................................... 3

      A.     The Parties ............................................................................................ 3

      B.     The Transaction and the Merger Agreement ......................................... 4

      C.     The Escrow Agreement ......................................................................... 7

      D.     The Company's Breaches of Representations and Warranties in the
            Merger Agreement ............................................................................... 7

      E.     Defendants' Attempts to Resolve the Disputes Relating to the Company's
            Breaches and the Partial Settlement ...................................................... 8

      F.     Plaintiff Amends His Complaint ........................................................... 9

III.    STANDARD OF REVIEW ....................................................................... 9

IV.    ARGUMENT .......................................................................................... 11

      A.     The Claim for Breach of the Duty of Good Faith and Fair Dealing Should
            Be Dismissed Because No Such Cause of Action Exists Under Texas Law ....... 11

      B.     The Claim Against Silver Point for Breach of the Duty of Good Faith and
            Fair Dealing Should Be Dismissed Because Silver Point Is Not a Party to
            the Escrow Agreement ........................................................................ 13

      C.     The Tortious Interference Claim Should Be Dismissed Because Plaintiff
            Has Failed to Allege the Essential Elements of the Claim ................... 14

      D.     The Tortious Interference Claim Should Be Dismissed Because Silver
            Point Cannot Tortiously Interfere with Its Subsidiary's Contract ....... 17

V.     CONCLUSION ........................................................................................ 20

## TABLE OF AUTHORITIES

## CASES

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)................................................................9

*Am-European Art Assocs., Inc. v. Trend Galleries, Inc.*,
    641 N.Y.S.2d 835 (App. Div. 1996) ..........................................13

*Am. Med. Int'l, Inc. v. Giurintano*,
    821 S.W.2d 331 (Tex. App.—Houston [14th Dist.] 1991, no writ) ............18

*Aranda v. Ins. Co. of N. Am.*,
    748 S.W.2d 210 (Tex. 1988)....................................................11

*Arnold v. Nat'l County Mut. Fire Ins. Co.*,
    725 S.W.2d 165 (Tex. 1987)....................................................11

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ............................................10, 16, 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................9, 10, 16

*Bertaut v. Parish of Jefferson*,
    No. 02-2104, 2002 WL 31528468 (E.D. La. Nov. 8, 2002) .........................1

*Black Car & Livery Ins., Inc. v. H & W Brokerage, Inc.*,
    813 N.Y.S.2d 751 (N.Y. App. Div. 2006) ....................................16

*Buckley v. Deloitte & Touche USA LLP*,
    No. 06 Civ. 3291, 2007 WL 1491403 (S.D.N.Y. May 22, 2007) ...............13

*Butnaru v. Ford Motor Co.*,
    84 S.W.3d 198 (Tex. 2002).....................................................14

*Cockrell v. Republic Mortg. Ins. Co.*, 817 S.W.2d 106
    (Tex. App.—Dallas 1991, no writ) ...........................................11

*Cole v. Hall*,
    864 S.W.2d 563 (Tex. App.—Dallas 1993, writ dism'd w.o.j.) .................13

*Cyber Media Group, Inc. v. Island Mortgage Network, Inc.*,
    183 F. Supp. 2d 559 (E.D.N.Y. 2002) ........................................13

*De Jesus v. Sears, Roebuck & Co., Inc.*,
    87 F.3d 65 (2d Cir. 1996) ......................................................9

*Deauville Corp. v. Federated Dep't. Stores, Inc.*,
    756 F.2d 1183 (5th Cir. 1985) ............................................................17, 18

*English v. Fischer*,
    660 S.W.2d 521 (Tex. 1983)......................................................................11

*Fed. Deposit Ins. Corp. v. Coleman*,
    795 S.W.2d 706 (Tex. 1990)......................................................................11

*Felsen v. Sol Cafe Mfg. Corp.*,
    24 N.Y.2d 682 (N.Y. 1969) ......................................................................18

*Finnegan v. Univ. of Rochester Med. Ctr.*,
    180 F.R.D. 247 (W.D.N.Y. 1998)...............................................................1

*Gurvey v. Cowan, Liebowitz & Latman, PC.*,
    No. 06 Civ. 1202, 2009 WL 1117278 (S.D.N.Y. Apr. 24, 2009)..........................15, 16

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989)..................................................................................9

*Hirsch v. Food Res., Inc.*,
    808 N.Y.S.2d 618 (App. Div. 2005) ......................................................19, 20

*Holloway v. Skinner*,
    898 S.W.2d 793 (Tex. 1995)......................................................................18

*John Paul Mitchell Sys. v. Randalls Food Mkts., Inc.*,
    17 S.W.3d 721 (Tex. App.—Austin 2000, pet. denied)..............................15

*Johnson & Johnson v. Guidant Corp.*,
    525 F. Supp. 2d 336 (S.D.N.Y. 2007)........................................................13

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006)......................................................................14

*Koret, Inc. v. Christian Dior, S.A.*,
    554 N.Y.S.2d 867 (App. Div. 1990) ..........................................................18

*Lama Holding Co. v. Smith Barney Inc.*,
    88 N.Y.2d 413 (1996)...............................................................................15

*Masefield AG v. Colonial Oil Indus.*,
    No. 05 Civ. 2231, 2006 WL 346178 (S.D.N.Y. Feb. 15, 2006) ..........14, 15, 16, 18, 19

*Matusovsky v. Merrill Lynch*,
  186 F. Supp. 2d 397 (S.D.N.Y. 2002)...........................................................10

*Medtech Prods. Inc. v. Ranir, LLC*,
  596 F. Supp. 2d 778 (S.D.N.Y. 2008)...........................................................15

*Multi-Juice, S.A. v. Snapple Beverage Corp.*,
  No. 02 Civ. 4635, 2003 WL 1961636 (S.D.N.Y. Apr. 25, 2003)..................19

*Oliver v. Rogers*,
  976 S.W.2d 792 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).........12

*Primetime 24 Joint Venture v. Echostar Commc'ns Corp.*,
  No. 98 Civ. 6738 RMB MHD, 2002 WL 44133 (S.D.N.Y. Jan. 11, 2002) ...18

*Randolph Equities, LLC v. Carbon Capital, Inc.*,
  No. Civ. 10889 (PAC), 2007 WL 914234 (S.D.N.Y. Mar. 26, 2008)............9

*Rapoport v. Asia Elecs. Holding Co., Inc.*,
  88 F. Supp. 2d 179 (S.D.N.Y.2000)..............................................................10

*Ricciuti v. N.Y. City Transit Auth.*,
  No. 90 Civ. 2823, 1991 WL 221110 (S.D.N.Y. Oct. 3, 1991) .......................1

*Romacorp, Inc. v. TR Acquisition Corp.*,
  No. 93 Civ. 5394,  1993 WL 497969 (S.D.N.Y Dec. 1, 1993),
  *aff'd*, 29 F.3d 620 (2d Cir. 1994) ................................................................12

*Sawan v. Chertoff*,
  589 F. Supp. 2d 817 (S.D. Tex. 2008) ..........................................................10

*Sedona Corp. v. Ladenburg Thalmann & Co., Inc.*,
  No. 03 Civ. 3120, 2009 WL 1492196 (S.D.N.Y. May 27, 2009)...................15

*Sharma v. Skaarup Ship Mgmt. Corp.*,
  916 F.2d 820 (2d Cir. 1990)....................................................................15, 16

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
  425 F.3d 119 (2d Cir. 2007)..........................................................................10

*Texas Taco Cabana, L.P. v. Taco Cabana of New Mexico*,
  304 F. Supp. 2d 903 (W.D. Tex. 2003)..........................................................18

*Travelers Indem. Co. of Ill. v. CDL Hotels USA, Inc.*,
  322 F. Supp. 2d 482 (S.D.N.Y. 2004)............................................................13

*Vioni v. Am. Capital Strategies Ltd.*,
    No. 08 Civ. 2950 (PAC), 2009 WL 174937 (S.D.N.Y. Jan. 23, 2009) ......................10

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*,
    8 N.Y.3d 422 (2007) ......................................................................................17

*Wil-Roye Inv. Co. II v. Washington Mut. Bank, FA*,
    142 S.W.3d 393 (Tex. App.—El Paso 2004, no pet.)..................................12

## **RULES**

Fed. R. Civ. P. 12(a)(4)(A) .................................................................................1

Fed. R. Civ. P. 12(b)(6)………………………………………………............. *passim*

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Defendants Silver Point Capital Fund, L.P. ("Silver Point") and SP Sage LLC ("Sage") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion for partial dismissal of Plaintiff's First Amended Complaint ("Motion") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules").[1]

## I.    PRELIMINARY STATEMENT

This action arises out of a merger transaction (the "Transaction") in which Silver Point and its affiliates agreed to pay approximately $48 million for all of the outstanding shares of a Texas corporation, Sage Telecom, Inc. (the "Company"). After entering into the Merger Agreement, Silver Point discovered that a host of representations and warranties that the Company made in connection with the Transaction were false, including those related to, *inter alia*, financial documents, regulatory matters, litigation disclosures, and tax obligations. The relevant Merger Agreement (defined below), which is governed by Texas law, requires the former shareholders of the Company (the "Former Shareholders") to indemnify Defendants for the Company's breaches of the representations and warranties therein, and requires the establishment of an Escrow Fund (defined below) from which the first $4.8 million of indemnification shall be paid; to the extent that amounts in the Escrow Fund are not used to

---

[1] The plain language of Rule 12(a)(4)(A) requires Defendants to serve their answer "within 10 days after notice of the court's action" on a motion filed pursuant to Rule 12. Fed. R. Civ. P. 12(a)(4)(A). This tolling mechanism is not altered by the filing of a motion for partial dismissal pursuant to Rule 12. *See, e.g., Ricciuti v. N.Y. City Transit Auth.*, No. 90 Civ. 2823, 1991 WL 221110, at *2 (S.D.N.Y. Oct. 3, 1991) ("*Any* motion, particularly when the motion addresses a significant portion of the complaint (as in the present case), will suspend the time to answer any claim."); *accord Finnegan v. Univ. of Rochester Med. Ctr.*, 180 F.R.D. 247, 249-50 (W.D.N.Y. 1998) (hospital's filing of motion to dismiss negligence cause of action against it suspended its time to defend against medical malpractice cause of action as well); *Bertaut v. Parish of Jefferson*, No. 02-2104, 2002 WL 31528468, at *1 (E.D. La. Nov. 8, 2002) ("Even the filing of a partial motion to dismiss extends the defendant's time to answer the entire complaint.") (*citing* 5B Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc. Civ. § 1346 (3d ed. 2004)). Defendants intend to and, through the filing of this Motion, do not waive their right to, answer and defend against the entire action.

indemnify Defendants, they are to be released to the Former Shareholders. After discovering the Company's numerous breaches, and giving proper notice of their claims, Silver Point and Sage have negotiated in good faith to resolve the disputes with Plaintiff for over a year.

Apparently impatient with the progress and results of those good faith discussions, Plaintiff, in his capacity as representative of the Former Shareholders, filed this suit. After mediation, a partial settlement was reached which resolved several of Defendants' claims. Pursuant to that settlement agreement, and as required by the Rules, on July 14, 2009, Plaintiff filed a First Amended Complaint ("Amended Complaint"). The Amended Complaint seeks an adjudication that would absolve the Former Shareholders of the numerous breaches of representations and warranties made by the Company, and distribute the remaining Escrow Fund, in its entirety, to the Former Shareholders.

In doing so, Plaintiff alleges four claims against Defendants: (1) breach of contract; (2) breach of duty of good faith and fair dealing; (3) tortious interference; and (4) declaratory judgment regarding the amount, if any, that each of the parties is entitled to receive from the Escrow Fund. While each of these claims are baseless on their merits, Plaintiff's claims for breach of the duty of good faith and fair dealing and tortious interference should be dismissed for failure to state a claim under Rule 12(b)(6) for the following reasons, as set forth in detail herein:

*First*, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing should be dismissed because such a cause of action does not exist under Texas law, which governs this dispute.

*Second*, Plaintiff's claim against Silver Point for breach of the implied covenant of good faith and fair dealing regarding the Escrow Agreement (defined below) should be dismissed because Silver Point **was not a party to that agreement**.

*Third*, the tortious interference claim against Silver Point should be dismissed because Plaintiff has not alleged that Silver Point *intentionally caused* Sage's alleged breach of the Escrow Agreement, an essential element of the claim.

*Fourth*, the tortious interference claim against Silver Point should also be dismissed because, as a matter of law, Silver Point cannot tortiously interfere with Sage's contract due to their affiliate relationship.

Accordingly, for the reasons set forth herein, Defendants respectfully request that Plaintiff's claims for breach of the implied covenant of good faith and fair dealing and tortious interference be dismissed.

## II. <u>STATEMENT OF FACTS</u>

**A.     The Parties.**

<u>Defendants</u>.  Silver Point is a privately owned investment partnership based in Connecticut.  Sage's principal place of business is in Connecticut, and Sage is the parent of the Company, which provides local phone service, nationwide long distance, and high-speed internet services to over a half million customers in eleven states.  Plaintiff does not dispute—and indeed, affirmatively pleads—that Sage "is an affiliate of Silver Point and an assignee of Silver Point's rights and obligations as the Buyer under the Merger Agreement."  (Am. Compl. ¶ 4.)

<u>Plaintiff</u>.  Plaintiff is Christopher M. Williams, who is a Texas resident and was appointed as "Shareholder Representative" under the Merger Agreement to represent certain former shareholders of the Company in connection with the Transaction.  (*See id.* ¶ 2.)

**B.** **The Transaction and the Merger Agreement.**

On or about December 31, 2006, Silver Point, the Company, and Plaintiff entered into an Agreement and Plan of Merger ("Merger Agreement"). (*See id.* ¶ 7; Declaration of Margaret Hope Allen ("Allen Dec."), filed concurrently herewith and incorporated herein, Ex. A.) Pursuant to the Merger Agreement, Silver Point agreed to pay the Former Shareholders about $48 million, in exchange for all of their then-outstanding shares of the Company, a Texas corporation. (Am. Compl. ¶ 8.) Specifically, the transaction was effected pursuant to the Texas Business Corporation Act and involved the merger of SP Sage Merger, Inc. (a Texas corporation), which was a specially-created subsidiary of Sage, with and into the Company (a Texas corporation), with the Company being the surviving company. (*See* Allen Dec., Ex. A at 4, § 2.1.) Further, as stated, Silver Point assigned its rights and obligations under the Merger Agreement to Sage. (*See* Am. Compl. ¶ 10.)

Texas Law Governs. The Merger Agreement contains a broad choice-of-law-provision, which selects Texas law:

> This Agreement ***and all claims arising out of or relating to it*** shall be construed, performed and enforced in accordance with, and governed by, ***the Laws of the State of Texas***, without giving effect to conflict or choice of Law rules thereof.

(*See* Allen Dec., Ex. A § 10.2(a) (emphasis added).)

The Indemnification Provision. As is customary in such transactions, pursuant to the Merger Agreement, the Former Shareholders agreed to indemnify Silver Point and Sage for, among other things, breaches of the Company's representations and warranties contained in the Merger Agreement:

> SECTION 6.2. Indemnification of the Buyer Indemnitees. ***The Buyer, Merger Sub, and the Surviving Corporation*** and their respective managers, officers, directors, partners, shareholders, employees, members and Affiliates (the "Buyer Indemnitees")

*shall be entitled to indemnification, and the Shareholders shall
severally indemnify the Buyer Indemnitees* pro rata in accordance
with their respective Applicable Percentage *from and against all
Losses and Actions (first from the Escrow Fund and to the extent
that the Escrow Fund is not available, severally from the
Shareholders pro rata in accordance with the respective
Applicable Percentage of the Shareholders)*, but excluding
liability for lost profits or incidental, consequential, indirect or
special damages (other than such damages or lost profits
recoverable under a Third-Party Claim), whether or not involving
any Third Party Claim, arising out of, resulting from or relating
directly or indirectly to or in connection with any of the following:

(a) *any breach of any representation or warranty of the Company
contained in this Agreement* or any Schedule hereto, or in any
certificate (other than the Closing Certificate) delivered to the
Buyer or Merger Sub in connection with the Closing or execution
and delivery of the MSA.

(b) *any (x) breach of or default in the performance of any
covenant or agreement* of the Company contained in this
Agreement or in any certificate delivered to the Buyer or Merger
Sub in connection with the Closing or execution of the MSA . . .

(d) *any event or events occurring prior to the Closing that would
constitute a breach of a representation or warranty of the
Company* contained in this Agreement if the representation were
made at the Closing, other than to the extent such event is directly
caused by the Buyer's management of the Business pursuant to the
MSA.

(*Id.*, Ex. A § 6.2 (emphasis added).)

The Escrow Fund. In order to facilitate indemnification of Silver Point and Sage

by the Former Shareholders, the Merger Agreement calls for a certain Escrow Fund consisting of

approximately 10% of the purchase price— or $4.8 million— to be established (the "Escrow

Fund"):

SECTION 6.11 Escrow Arrangements.

(a) As described in Section 2.11(a), at the Closing, the Buyer shall
transfer to the Escrow Agent *the Escrow Amount, which shall be
available to compensate for Losses incurred by the Buyer*

**Indemnitees (and, to the extent that the Escrow Amount is so available, the Buyer Indemnitees will recover from such Escrow Amount prior to proceeding against the Shareholders**), upon the terms and conditions of this Section 6.11, as provided further in the Escrow Agreement.

(b) Subject to the following requirements and the provisions of the Escrow Agreement, the Escrow Fund shall be disbursed as follows:

(i) No later than April 15, 2008, any remaining amount in the Escrow Account in excess of the amount of any unresolved claims made by the Buyer Indemnitees under Section 6.2 or Section 5.6 shall be disbursed to the Shareholders' Representative, for distribution to the Shareholders in accordance with their Applicable Percentages and the remainder shall remain in the Escrow Account; and

(ii) With respect to any amounts retained in the Escrow Account under Section 6.11(b)(i) in respect of an unresolved claim for indemnification, upon resolution of any such unresolved claim, the Buyer and the Shareholders' Representative shall deliver written instructions to the Escrow Agent indicating the amount, if any, to be disbursed to the Buyer in respect of such claim and that the balance of the Escrow Fund held in the Escrow Account in respect of such claim shall be disbursed to the Shareholders' Representative for distribution to the Shareholders in accordance with their Applicable Percentages.

(c) The Buyer and the Shareholders' Representative shall cooperate in good faith to ensure that the Escrow Fund is distributed to the Shareholders' Representative or the Buyer (as the case may be), pursuant to the terms of this Section 6.11, whether through the preparation of written instructions to the Escrow Agent or otherwise; provided that in lieu of delivering joint written instructions, a party may deliver written instructions to the Escrow Agent and the other party at the end of any period set forth in this Section 6.11, and if such other party does not dispute such written instructions within ten (10) Business Days after receipt thereof, then such written instructions shall be deemed joint written instructions for all purposes of this Section 6.11 and the Escrow Agreement.

(*Id.*, Ex. A § 6.11 (emphasis added); *see also* Am. Compl. ¶¶ 8-9.)

C.    **The Escrow Agreement.**

Sage, Plaintiff, and the Bank of New York as Escrow Agent entered into an Escrow Agreement dated as of May 30, 2007 (the "Escrow Agreement" and together with the Merger Agreement, the "Agreements").  (*See* Allen Dec., Ex. B.)  Silver Point was ***not*** a party to Escrow Agreement.  (*See* Am. Compl. ¶ 10.)  The Escrow Agreement sets forth the *ministerial procedures* related to the Escrow Fund, such as its establishment, maintenance, and claims procedure.  (*See*, *e.g.*, Allen Dec., Ex. B § 1 (establishment of escrow), § 2 (investment of Escrow Funds), § 3 (claims by buyer indemnities), § 4 (duties of escrow agent).)  It further contains a narrow New York choice-of-law provision.  (*See id.*, Ex. B § 13 ("This Agreement will be governed by the law of the State of New York, without regard to conflicts of laws principles.").)

D.    **The Company's Breaches of Representations and Warranties in the Merger Agreement.**

After the Merger Agreement was executed, Sage and Silver Point discovered that the Company had breached numerous representations and warranties under the Merger Agreement.  As a result, and in accordance with the terms of the Merger Agreement, Defendants submitted claims against the Escrow Fund to recoup the millions of dollars in damages they have sustained due to the Company's breaches.  (*See* Am. Compl. ¶¶ 13-14.)

For the sake of brevity, Defendants will not set forth the full merits of their claims here.  Plaintiff's crude recitation of the purported "facts" contained in the Amended Complaint will be fully debunked by fact discovery in this matter, and Defendants' counterclaims will be found meritorious.[2]  Very briefly, Defendants' remaining claims against the Escrow Fund after

---

[2] Defendants hereby expressly reserve their rights to file counterclaims against Plaintiff, as well as their rights to seek joinder of the Former Shareholders as counterclaim-defendants and assert claims against them.

the recent partial settlement include, *inter alia*: (1) the Company's failure to implement a rate increase on its services, despite representations that it had already implemented such rate increase; and (2) the Company's alleged violations of the Federal Communication Commission's rules governing the low-income support mechanism of the federal universal service fund.

**E.    Defendants' Attempts to Resolve the Disputes Relating to the Company's Breaches and the Partial Settlement.**

Contrary to Plaintiff's accusations of bad faith and delay (*see, e.g.,* Am. Compl. ¶ 16), Defendants have actively sought an amicable and fair resolution of these disputes for over a year.  Defendants have met with Plaintiff on multiple occasions in Texas, and engaged in substantive negotiations in Texas regarding Defendants' rights to indemnification for the Company's breaches of multiple representations and warranties in the Merger Agreement. Despite these efforts, and despite the lack of substantive merit to Plaintiff's claims, Plaintiff filed this lawsuit on March 13, 2009.  (*See* Compl., Dkt. Entry 1.)  On April 6, 2009, in accordance with the Individual Practices of this Court, Defendants filed a letter requesting a pre-motion conference (the "Pre-Motion Conference Letter") so that Defendants could file a motion pursuant to Rule 12(b)(6), in which Defendants detailed their bases for partial dismissal of the original Complaint.  (*See* Pre-Motion Conference Letter.)  Before the pre-motion conference, which was scheduled for May 7, 2009, the Parties agreed to submit their disputes to non-binding mediation in Dallas, Texas.  Defendants in good faith mediated the dispute with Plaintiff on April 27, 2009, and, as a result, a partial settlement was reached, pursuant to which there was amicable resolution of three of Defendants' five substantive claims against the Escrow Fund, and over $2 million released from the Escrow Fund and into the pockets of the Former Shareholders.  (*See* Am. Compl. ¶ 17.)

## F.     Plaintiff Amends His Complaint.

As required by the terms of the partial settlement (as well as the Rules), Plaintiff filed his Amended Complaint on July 14, 2009.  In reaction to Defendants' well-reasoned arguments in their Pre-Motion Conference Letter, Plaintiff limited the breach of contract claim as to the Merger Agreement and dropped the claim as to the Escrow Agreement (*compare* Compl. ¶ 23 *with* Am. Compl. ¶ 23), repackaged his claim against Silver Point for breach of the covenant of good faith and fair dealing into one for tortious interference by pleading in the alternative (*see* Am. Compl. ¶¶ 29-31), and attempted to buttress several of his significantly weaker allegations (*see, e.g.*, Am. Compl. ¶ 21).  Despite Plaintiff's efforts, several of the causes of action alleged in the Amended Complaint are fatally flawed.  Accordingly, Defendants file this Motion.

## III.     <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss, "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The district court may dismiss a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Randolph Equities, LLC v. Carbon Capital, Inc.*, No. Civ. 10889 (PAC), 2007 WL 914234, at *2 (S.D.N.Y. Mar. 26, 2008) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989)). While the Court must accept as true all well-pleaded factual allegations in the complaint, and view them in the light most favorable to the plaintiff, "***conclusory allegations or legal conclusions masquerading as factual conclusions" are not sufficient to withstand a motion to dismiss***.  *See De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996) (emphasis added).  Conclusory allegations that amount to nothing more than a recitation of the elements of

a cause of action are "not entitled to be assumed to be true." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009).

Further, to survive dismissal, a complaint must plead enough facts to be "plausible on its face," *id.* at 1949 (quoting *Twombly*, 550 U.S. at 547), and the plaintiff is required to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Vioni v. Am. Capital Strategies Ltd.*, No. 08 Civ. 2950 (PAC), 2009 WL 174937, at *2 (S.D.N.Y. Jan. 23, 2009) (Crotty, J.) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)); *see also Sawan v. Chertoff*, 589 F. Supp. 2d 817, 825 (S.D. Tex. 2008) ("The plaintiff must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555).

In determining whether dismissal is appropriate, "the court may consider any written instrument . . . upon which the complaint relies and [which is] integral to the complaint." *Vioni*, 2009 WL 174937, at *2 (quoting *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2007)). In doing so, the Court is not obliged to accept the allegations of the complaint as to how to construe such documents, and to the extent Plaintiff's allegations contradict the terms of the relevant contracts, the plain contractual terms control. *See Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) ("allegations ... contradicted by ... a document [referenced in the complaint] are insufficient to defeat a motion to dismiss"); *Rapoport v. Asia Elecs. Holding Co., Inc.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y.2000) (granting motion to dismiss where "documents [referenced but not attached to complaint] contradict Plaintiffs' allegations.").

# IV.   ARGUMENT

## A.   The Claim for Breach of the Duty of Good Faith and Fair Dealing Should Be Dismissed Because No Such Cause of Action Exists Under Texas Law.

The claim for breach of the duty of good faith and fair dealing should be dismissed as to both Defendants because no implied duty of good faith and fair dealing—or corresponding cause of action—exists under Texas law, which governs this dispute.  (*See* Allen Dec., Ex. B § 13.)

Plaintiff does not dispute that this case is about Defendants' right to indemnification under the ***Merger Agreement***, and the Merger Agreement is governed by Texas law:  "This Agreement *and all claims arising out of and relating to it* shall be construed, performed and enforced in accordance with, and governed by, the Laws of the State of Texas, without giving effect to the conflict or choice of Law rules thereof."  (*Id.*, Ex. A § 10.2; s*ee also* Am. Compl. ¶¶ 1, 13-15.)  There can be no serious dispute that this action arises out of and relates to the Merger Agreement.

Texas law does not recognize an implied covenant of good faith and fair dealing, or a corresponding cause of action for its breach.  The Texas Supreme Court has consistently held that a duty of good faith and fair dealing is not imposed in every contract, but "only in special relationships marked by shared trust or an imbalance of bargaining power."[3]  *Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 708-09 (Tex. 1990); *see also English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983) (rejecting good faith and fair dealing claim because the "concept is contrary to our well-reasoned and long-established adversary system which has

---

[3] Such special relationships under Texas law are found only in extremely limited circumstances, which are not present here.  *See, e.g., Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987) (insurer and insured); *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 212 (Tex. 1988) (workers' compensation carrier and employees); *Cockrell v. Republic Mortg. Ins. Co.*, 817 S.W.2d 106, 116 (Tex. App.—Dallas 1991, no writ) (business partners).

served us ably in Texas for almost 150 years"). The duty does not exist in "ordinary commercial transactions," such as the sale of a business. *Wil-Roye Inv. Co. II v. Washington Mut. Bank, FA*, 142 S.W.3d 393, 409-10 (Tex. App.—El Paso 2004, no pet.); *see also Oliver v. Rogers*, 976 S.W.2d 792, 806 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (holding relationship of sellers and buyers of business is not a "special relationship" that gives rise to a duty of good faith and fair dealing). In this case, Plaintiff does not— and cannot— assert a special relationship with either Defendant that would give rise to the duty of good faith and fair dealing under Texas law. (*See generally* Am. Compl.)

No doubt aware of these principles, Plaintiff baselessly attempts to contort this dispute into a breach of the Escrow Agreement solely in order to take advantage of that agreement's New York choice of law provision, and New York law's cause of action for breach of the implied covenant of good faith and fair dealing. (*See*, *e.g.*, Am. Compl. ¶ 27.) But this case is about Defendants' right to indemnification, and that right is created and governed solely by the Merger Agreement, not the Escrow Agreement. (*See* Allen. Dec., Ex. A § 6.) The Merger Agreement (in Section 6.11) makes the Escrow Agreement the vehicle through which Defendants claim indemnity; in other words, the Escrow Agreement is merely the procedural mechanism for the exercise of substantive rights created by the Merger Agreement. (*See id.*, Ex. A § 6.11.)

To treat this matter as an alleged breach of the Escrow Agreement would truly be to let the tail wag the dog. There is simply no basis for overriding the Merger Agreement's choice of law provision, which unambiguously calls for the application of Texas law to this action. Accordingly, Plaintiff's claim for breach of the implied duty of good faith and fair dealing should be dismissed. *See Romacorp, Inc. v. TR Acquisition Corp.*, No. 93 Civ. 5394,

1993 WL 497969, at *7 (S.D.N.Y Dec. 1, 1993) ("TRAC also alleges that Romacorp breached a

duty to deal in good faith. . . . Texas law does not impose such a duty . . . ."), *aff'd*, 29 F.3d 620

(2d Cir. 1994); *Cole v. Hall*, 864 S.W.2d 563, 567-68 (Tex. App.—Dallas 1993, writ dism'd

w.o.j.) (affirming dismissal of purported good faith and fair dealing claim).[4]

## B. The Claim Against Silver Point for Breach of the Duty of Good Faith and Fair Dealing Should Be Dismissed Because Silver Point Is Not a Party to the Escrow Agreement.

Even if the Court finds that New York law applies, and therefore declines to

dismiss on the grounds set forth in Section A above, the Court should still dismiss the good faith

and fair dealing claim as to Silver Point because Silver Point is not a party to the Escrow

Agreement. The parties to the Escrow Agreement are Plaintiff, Sage, and the Escrow Agent.

(*See* Am. Compl. ¶ 10; Allen Dec., Ex. B at 10.) Silver Point is not a party to the Escrow

Agreement, and had no obligation to perform under the Escrow Agreement. (*See* Am. Compl.

¶ 10; Allen Dec., Ex. B at 10.) "[T]here can be no breach of the duty of good faith and fair

dealing where there is no valid and binding contract from which such a duty would arise."

*Travelers Indem. Co. of Ill. v. CDL Hotels USA, Inc.*, 322 F. Supp. 2d 482, 493 (S.D.N.Y. 2004)

(internal quotations omitted); *see also Cyber Media Group, Inc. v. Island Mortgage Network,

Inc.*, 183 F. Supp. 2d 559, 582 (E.D.N.Y. 2002) ("[N]o covenant of good faith and fair dealing

arises in the absence of a contract."); *Am-European Art Assocs., Inc. v. Trend Galleries, Inc.*, 641

N.Y.S.2d 835, 836 (N.Y. App. Div. 1996) ("The second cause of action for breach of an implied

---

[4] *Cf. Johnson & Johnson v. Guidant Corp.*, 525 F. Supp. 2d 336, 357 (S.D.N.Y. 2007) ("Defendants argue that plaintiff's claim for breach of an implied duty of good faith and fair dealing against Guidant must be dismissed because no such duty exists under Indiana law. . . . Defendants are correct."); *Buckley v. Deloitte & Touche USA LLP*, No. 06 Civ. 3291, 2007 WL 1491403, at *12 (S.D.N.Y. May 22, 2007) ("[B]ecause Pennsylvania law does not recognize a claim for aiding and abetting fraud, this Court grants Deloitte's motion to dismiss Claim V.").

duty of good faith and fair dealing . . . was also properly dismissed for lack of a valid and

binding contract from which such a duty would arise.").

Accordingly, as a non-party to the Escrow Agreement, Silver Point had no

contractual obligation, and thus no implied duty of good faith and fair dealing.

## C.    The Tortious Interference Claim Should Be Dismissed Because Plaintiff Has Failed to Allege the Essential Elements of the Claim.

Plaintiff's claim against Silver Point for tortious interference with the Escrow

Agreement should be dismissed because the Amended Complaint does not allege that Silver

Point *intentionally caused* Sage to purportedly breach that Agreement, as required by Texas and

New York law. [5]

Under New York law, the elements of a claim for tortious interference are:

(1) "the existence of a valid contract between the plaintiff and a third party; (2) the defendant's

knowledge of the contract; (3) ***the defendant's intentional procurement of the third-party's***

***breach of the contract without justification***; (4) actual breach of the contract; and (5) damages

resulting therefrom." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006)

(emphasis added) (internal quotations omitted); *Masefield AG v. Colonial Oil Indus.*, No. 05 Civ.

2231, 2006 WL 346178, at *4 (S.D.N.Y. Feb. 15, 2006).  Similarly, under Texas law, the

elements are:  (1) a valid contract; (2) ***defendant willfully and intentionally interfered with that***

***contract***; (3) the interference proximately caused the plaintiff's damage; and (4) the plaintiff

suffered actual damage or loss.  *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex.

2002).  Under Texas law, the plaintiff can show the second prong by establishing that ***defendant***

***intentionally induced or caused the third party to breach its contract with plaintiff***.  *See John*

---

[5] Defendants do not concede that Sage breached the Escrow Agreement or that Plaintiff suffered any damages as a result of either Defendant's acts or omissions.

*Paul Mitchell Sys. v. Randalls Food Mkts., Inc.*, 17 S.W.3d 721, 730-31 (Tex. App.—Austin 2000, pet. denied).

Though the Amended Complaint is rife with accusations of "bad faith" conduct on the part of both defendants, (*see* Am. Compl. ¶¶ 16-18, 20), there is no allegation that Silver Point intentionally and without justification caused Sage to breach the Escrow Agreement. (*See generally id.*) As such, Plaintiff has omitted an essential element of the tortious interference cause of action, and the claim should be dismissed.

Failure to allege the defendant's intentional procurement of a breach is ground for dismissal. *See Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990) ("[The district court properly dismissed Count III of the amended complaint for failure to allege that [defendant's] actions were the 'but for' cause of Chemical Bank's alleged breach . . . . Intentional procurement of a breach is an essential element . . . ."); *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424-25 (1996). District courts routinely dismiss claims at the pleading stage for this reason. *See, e.g.*, *Sedona Corp. v. Ladenburg Thalmann & Co., Inc.*, No. 03 Civ. 3120, 2009 WL 1492196, at *9 (S.D.N.Y. May 27, 2009); *Gurvey v. Cowan, Liebowitz & Latman, PC.*, No. 06 Civ. 1202, 2009 WL 1117278, at *6 (S.D.N.Y. Apr. 24, 2009); *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 814-15 (S.D.N.Y. 2008); *Masefield*, 2006 WL 346178, at *4.

These precedents make clear that the Amended Complaint does not remotely approach the level of factual specificity needed to survive a motion to dismiss. The tortious interference claim (which is pled in the alternative), is based on the allegation that:

> Defendants have breached the duty of good faith and fair dealing under New York law by asserting under the Escrow Agreement, and refusing to withdraw, unsupported, inflated, and improper claim notices for the ARPU Claim and FCC Claim in order to

prevent the distribution of the balance of the Escrow Fund to
Shareholders' Representative.

(Am. Compl. ¶¶ 27, 30.)  There is no allegation here or anywhere else in the Amended

Complaint that Silver Point intentionally and without justification caused the alleged breach of

the Escrow Agreement.  As such, the tortious interference claim fails, because Plaintiff "has

alleged no specific action on the part of" Silver point to cause Sage's alleged breach.  *See*

*Masefield*, 2006 WL 346178, at \*4.

Further, Plaintiff's entitlement to have all reasonable inferences drawn in his

favor at the pleading stage will not salvage this claim.  "[T]he law requires some factual

specificity in pleading tortious interference," and here there is none.  *Gurvey*, 2009 WL 1117278,

at \*6; *Black Car & Livery Ins., Inc. v. H & W Brokerage, Inc.*, 813 N.Y.S.2d 751, 752 (App. Div.

2006) ("The cause of action alleging tortious interference with a contract was properly

dismissed . . . as the allegations in support of this cause of action are devoid of a factual basis

and are vague and conclusory.") (internal quotation marks omitted).  A plaintiff cannot sustain a

tortious interference claim with nothing more than "conclusory allegations" that "lack any

factual underpinnings" in the complaint.  *Masefield*, 2006 WL 346178, at \*4.

Moreover, the tortious interference claim is completely untenable in light of the

Supreme Court's *Iqbal* and *Twombly* decisions.  Those cases hold that a plaintiff must plead

sufficient facts to make his or her claim "'plausible on its face.'"  *See Iqbal*, 129 S. Ct. at 1949

(quoting *Twombly*, 550 U.S. at 570).  Legal conclusions, such as "Silver Point's actions

described in paragraph 27 constitute tortious interference . . ." (*see* Am. Compl. ¶ 30), are not

entitled to be assumed true, and cannot sustain a claim on their own.  *See Iqbal*, 129 S. Ct. at

1949.  Unless he alleges the "essential element" that Silver Point wrongfully caused Sage to

breach the Escrow Agreement, *Sharma*, 916 F.2d at 828, and supports that allegation with well-

pled facts, Plaintiff has not "nudged" his claim "across the line from conceivable to plausible." *Iqbal*, 129 S. Ct. at 1951 (internal quotation marks omitted). In fact, by failing to allege the required elements of a tortious interference claim, Plaintiff offers less than what the Supreme Court has held inadequate to survive a Rule 12(b)(6) motion. *See id.* at 1949 ("Threadbare recitals of the elements of a cause of action, supported merely by conclusory statements, do not suffice.").

**D. The Tortious Interference Claim Should Be Dismissed Because Silver Point Cannot Tortiously Interfere with Its Subsidiary's Contract.**

Defendants vigorously dispute that either of them has breached either Agreement. And the tortious interference claim should be dismissed for all of the reasons stated above. But even if Plaintiff could prove that Sage breached the Escrow Agreement, the tortious interference claim would still fail because Silver Point's relationship to Sage gives it an economic interest in that agreement.

Both Texas and New York law recognize defenses to tortious interference on this ground. In Texas, it is a defense that the defendant has an equal or greater right or financial interest than the contracting party in the subject matter of the contract. *See Deauville Corp. v. Federated Dep't. Stores, Inc.*, 756 F.2d 1183, 1196 (5th Cir. 1985). And in New York, it is a defense to a tortious interference claim that the defendant "acted to protect its own legal or financial stake in the breaching party's business." *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 426 (2007). This "economic interest" defense is widely applied under Texas law in the parent-subsidiary context, *see Deauville Corp.*, 756 F.2d at 1196, and under New York law "where defendants [are] significant stockholders in the breaching party's business," or "where defendant and the breaching party had a parent-subsidiary relationship" or are otherwise "tightly interrelated affiliates." *See White Plains Coat & Apron Co.*, 8 S.Y.3d at

426; *Masefield*, 2006 WL 346178, at *8.  A basic premise of tortious interference is that only a "stranger" to a contract can tortiously interfere with it.  *See Koret, Inc. v. Christian Dior, S.A.,* 554 N.Y.S.2d 867, 869 (App. Div. 1990); *Holloway v. Skinner*, 898 S.W.2d 793, 794-95 (Tex. 1995).  Under both Texas and New York law, a corporate parent is not a stranger in this sense, and therefore has the right to "interfere" with its subsidiary's contracts to protect its own economic interests.  *Primetime 24 Joint Venture v. Echostar Commc'ns Corp.*, No. 98 Civ. 6738 RMB MHD, 2002 WL 44133, *8 (S.D.N.Y. Jan. 11, 2002); *see also Felsen v. Sol Cafe Mfg. Corp.*, 24 N.Y.2d 682, 687 (N.Y. 1969) ("Chock Full O'Nuts, as the sole stockholder of Sol Cafe, had an existing economic interest in the affairs of Sol Cafe which it was privileged to attempt to protect when it 'interfered' with plaintiff's contract . . . with Sol Cafe."); *Koret*, 554 N.Y.S.2d at 869; *Deauville Corp.*, 756 F.2d at 1196 (holding parent corporation is privileged to interfere with subsidiary's contracts because of financial interest triggered by stock ownership); *Texas Taco Cabana, L.P. v. Taco Cabana of New Mexico*, 304 F. Supp. 2d 903, 912 (W.D. Tex. 2003) (dismissing claim for tortious interference because corporate parent was incapable of interfering with subsidiary's contractual relations under Texas law); *Am. Med. Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 336 (Tex. App.—Houston [14th Dist.] 1991, no writ) (parent and subsidiary cannot be liable for tortiously interfering with each other's contracts).

These considerations apply here with full force.  Silver Point's economic interest through its relation with Sage cannot be gainsaid, even at this stage in the litigation.  The Amended Complaint notes that Silver Point purchased all of the "then-outstanding shares of Sage [Telecom, Inc.]," and that Sage currently "is an affiliate of Silver Point."  (*See* Am. Compl. ¶¶ 4, 8.)  Further, as alleged by Plaintiff, the purpose of the Escrow Agreement is to facilitate the indemnification of both Sage and Silver Point for the damages resulting from the Former

Shareholders' breaches of their representations and warranties, and that Silver Point has been

acting in its own economic interest by allegedly delaying the disbursement of the Escrow Fund.

(*See id.* ¶ 16 ("Defendants have engaged in a pattern and practice of delaying the resolution of

their claims in order to effectively hold the Escrow Fund hostage and gain leverage to obtain a

large payment from the Escrow Fund . . ."); *see also id.* ¶ 11 ("[T]he Escrow Fund was to be

distributed to Former Shareholders' Representative on April 15, 2008 except to the extent needed

to satisfy certain indemnity claims asserted by the 'Buyer Indemnitees'. . ."), ¶ 26 ("[B]oth

Defendants purport to be exercising claim notice rights under the Escrow Agreement as 'Buyer

Indemnitees.'").)  Plaintiff's Amended Complaint makes clear that Silver Point has an economic

stake in both Sage and the Escrow Agreement itself.

     Further, although under New York law Plaintiff could theoretically overcome this

defense ***only*** by alleging malice, fraud, or illegality, no such malice or fraud or illegality is

alleged here.  *See Hirsch v. Food Res., Inc.*, 808 N.Y.S.2d 618, 622 (App. Div. 2005) (affirming

dismissal of tortious interference claim because, "absent allegations of malice or fraudulent or

illegal means, no liability lies against" "an owner with an economic interest" in the contract at

issue).  Plaintiff's allegations of "bad faith" are not enough.  *See id.*  (allegations of "bad faith"

against "an owner with economic interest" are insufficient to withstand dismissal of tortious

interference claim).  Silver Point's economic interest, combined with Plaintiff's failure to allege

malice, fraud, or illegality, requires dismissal of this claim.  *See Masefield*, 2006 WL 346178, at

*6 ("[B]ecause Colonial has failed to plead either malice or criminal or fraudulent conduct, the

Court must dismiss its tortious interference with contract claim . . . ."); *Multi-Juice, S.A. v.

Snapple Beverage Corp.*, No. 02 Civ. 4635, 2003 WL 1961636, at *5 (S.D.N.Y. Apr. 25, 2003)

("As Mistic was its wholly-owned subsidiary, Snapple could not tortiously interfere with the

distribution agreement . . . .   The tortious interference claim is dismissed.") (internal citation omitted); *Hirsch*, 808 N.Y.S.2d at 622 ("[Defendant] was also acting as an owner with an economic interest; absent allegations of malice or fraudulent or illegal means, no liability lies against him.").

## V.     <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss Plaintiff's claims for breach the implied covenant of good faith and fair dealing as alleged against both Defendants and his claim for tortious interference as alleged against Silver Point.

Dated: New York, New York
      August 13, 2009.

                    WEIL, GOTSHAL & MANGES LLP


                    /s/ T. Ray Guy
                    T. Ray Guy, *pro hac vice*
                    Texas Bar No. 08648500
                    ray.guy@weil.com
                    Margaret Hope Allen, *pro hac vice*
                    Texas Bar No. 24045397
                    margaret.allen@weil.com
                    200 Crescent Court, Suite 300
                    Dallas, Texas 75201
                    (214) 746-7700 (Telephone)
                    (214) 746-7777 (Facsimile)

                    Randi W. Singer (RS-6342)
                    randi.singer@weil.com
                    Heather R. Solow (HS-8680)
                    heather.solow@weil.com
                    WEIL, GOTSHAL & MANGES LLP
                    767 Fifth Avenue
                    New York, New York 10153
                    (212) 310-8000 (Telephone)
                    (212) 310-8007 (Facsimile)

                    **ATTORNEYS FOR DEFENDANTS**
                    **SILVER POINT CAPITAL FUND, L.P.**
                    **AND SP SAGE LLC**


**CERTIFICATE OF SERVICE**

        I hereby certify that on the 13th day of August, 2009, I electronically transmitted the foregoing document using the ECF system for filing and transmittal of a Notice of Electronic Filing to those parties registered for ECF in this case.


                    /s/ Margaret Hope Allen
                    Margaret Hope Allen