T. Ray Guy, *pro hac vice*
Texas Bar No. 08648500
ray.guy@weil.com
Margaret Hope Allen, *pro hac vice*
Texas Bar No. 24045397
margaret.allen@weil.com
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
(214) 746-7700 (Telephone)
(214) 746-7777 (Facsimile)

Randi W. Singer (RS-6342)
randi.singer@weil.com
Heather R. Solow (HS-8680)
heather.solow@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000 (Telephone)
(212) 310-8007 (Facsimile)

Attorneys For Defendants

| | |
|---|---|
| CHRISTOPHER M. WILLIAMS, in his capacity as Shareholders' Representative, | : |
| Plaintiff, | : |
| | : Index No. 09-CV-2359-PAC |
| vs. | : |
| | : **SILVER POINT CAPITAL FUND, L.P.'S** |
| SILVER POINT CAPITAL FUND, L.P. and SP SAGE LLC, | : **AND SP SAGE LLC'S ANSWER AND** |
| | : **AFFIRMATIVE DEFENSES TO** |
| | : **PLAINTIFF'S FIRST AMENDED** |
| Defendants. | : **COMPLAINT AND COUNTERCLAIMS** |
| | : |

Defendants Silver Point Capital Fund, L.P. ("Silver Point") and SP Sage LLC

("SP Sage") (collectively, "Defendants") respectfully answer the First Amended Complaint (the

"Amended Complaint") filed by Plaintiff Christopher M. Williams, in his capacity as

Shareholders' Representative ("Plaintiff" or "Shareholders' Representative") in correspondingly

numbered paragraphs, raise affirmative defenses thereto, and bring counterclaims as follows:

# I.  ANSWER

## NATURE OF THIS ACTION

1.      Defendants admit that the Amended Complaint purports to be an action arising from claims made by Defendants to an escrow fund (the "Escrow Fund").  To the extent not expressly admitted herein, the remaining allegations in Paragraph 1 are conclusions of law requiring no answer, but, to the extent a responsive pleading is required, they are denied.

## THE PARTIES

2.      Defendants admit the allegations in Paragraph 2, and refer to the Merger Agreement for that document's true and complete contents.

3.      Defendants admit that Silver Point is a Delaware limited partnership with its principal place of business in Connecticut, that Silver Point was the "Buyer" of the Company under the Merger Agreement, and that Silver Point has expressly consented to litigate in New York any claims arising under, or related to, the Merger Agreement.  Defendants further refer to the Merger Agreement for that document's true and complete contents.  Defendants otherwise deny the allegations contained in Paragraph 3.

4.      Defendants admit that SP Sage is a Delaware limited liability company with its principal place of business in Connecticut, and that SP Sage is an affiliate of Silver Point and an assignee of Silver Point's rights and obligations as the Buyer under the Merger Agreement, and that SP Sage has expressly consented to litigate in New York any claims arising under, or related to, the Merger Agreement.  Defendants further refer to the Merger Agreement for that document's true and complete contents.  Defendants otherwise deny the allegations contained in Paragraph 4.

## JURISDICTION AND VENUE

5.      The allegations in Paragraph 5 are conclusions of law requiring no answer,

but, to the extent a responsive pleading is required, Defendants admit this Court has subject-matter jurisdiction.

6. The allegations in Paragraph 6 are conclusions of law requiring no answer, but, to the extent a responsive pleading is required, Defendants do not contest that venue is proper. Defendants refer to the Merger Agreement for that document's true and complete contents, and lack knowledge or information sufficient to form a belief as to whether the Escrow Fund that is the subject of this action is located and administered in this district.

## FACTUAL BACKGROUND

7. Defendants admit the allegations in Paragraph 7.

8. Defendants admit the allegations in Paragraph 8.

9. Defendants admit the allegations in Paragraph 9.

10. Defendants admit the allegations in Paragraph 10.

11. Defendants admit that under the terms of the Merger Agreement and the Escrow Agreement, the Escrow Fund was to be distributed to Shareholders' Representative on April 15, 2008 except to the extent needed to satisfy certain indemnity claims asserted by the "Buyer Indemnitees" (as defined in the Merger Agreement). Defendants refer to the Merger Agreement and the Escrow Agreement for the true and complete contents of those documents; the remaining allegations in Paragraph 11 are conclusions of law requiring no answer, but, to the extent a responsive pleading is required, they are denied.

12. Defendants admit that, under the Merger Agreement and the Escrow Agreement, if a dispute arose between the Shareholders' Representative and the Buyer Indemnitees about an indemnity claim, the Escrow Agent was not authorized to distribute the amount of the disputed claim from the Escrow Fund until the dispute was resolved. Defendants further admit that, absent resolution of the dispute, the parties agreed in the Merger Agreement to

submit to the jurisdiction of this Court to resolve such disputes. Defendants refer to the Merger Agreement for the true and complete contents of that document; the remaining allegations in Paragraph 12 are conclusions of law requiring no answer, but, to the extent a responsive pleading is required, they are denied.

13.    Defendants admit that on April 14, 2008, SP Sage and Sage Telecom, Inc., as the "Surviving Corporation" pursuant to the Merger Agreement, submitted an indemnity claim notice ("Claim Notice") to Shareholders' Representative and the Escrow Agent; and that their purpose in doing so was to seek indemnification for the damages that Defendants suffered due to Sage Telecom, Inc.'s (the "Company") breaches of its representations and warranties under the Merger Agreement. Defendants further refer to the Merger Agreement for that document's true and complete contents. To the extent not expressly admitted herein, Defendants deny the remaining allegations of Paragraph 13 of the Amended Complaint.

    a.  Defendants admit that, through the Claim Notice, SP Sage and the Surviving Corporation sought indemnification for the Company's failure to pay certain state taxes; that this failure constituted a breach of the Company's representations, warranties and covenants under the Merger Agreement; and that the Claim Notice provided a good faith estimate valuing this claim at $1.9 million. To the extent not expressly admitted herein, Defendants deny the remaining allegations of Paragraph 13(a) of the Amended Complaint.

    b.  Defendants admit that, through the Claim Notice, SP Sage and the Surviving Corporation seek indemnification for the Company's failure to implement changes in rates that it charged customers in a manner

consistent with information provided on the Company's behalf (the "ARPU Claim"); that this failure renders certain materials provided during the due diligence process on the Company's behalf materially inaccurate and misleading, thus constituting a breach of the Company's representations, warranties and covenants under the Merger Agreement; and that the Claim Notice provided a good faith estimate valuing this claim at $2.5 million. To the extent not expressly admitted herein, Defendants deny the remaining allegations of Paragraph 13(b) of the Amended Complaint.

c. Defendants admit that, through the Claim Notice, SP Sage and the Surviving Corporation sought indemnification for the Company's failure to provide information concerning a then-pending lawsuit against the Company; that this failure constituted a breach of the Company's representations, warranties and covenants under the Merger Agreement; and that the Claim Notice provided a good faith estimate valuing this claim at $2.2 million. To the extent not expressly admitted herein, Defendants deny the remaining allegations of Paragraph 13(c) of the Amended Complaint.

14. Defendants admit that on April 28, 2008, SP Sage and the Surviving Corporation submitted a claim notice seeking indemnification in connection with an investigation by the Federal Communications Commission (the "FCC Claim"); and that the notice did not attempt to quantify the value of the FCC Claim; that the FCC Claim is based on possible violations of certain Federal Communications Commission rules by the Company, and

that if such violations occurred, they would constitute a breach of the Company's representations, warranties and covenants under the Merger Agreement. The remaining allegations in Paragraph 14 are conclusions of law requiring no answer, but, to the extent a responsive pleading is required, they are denied.

15. Defendants admit that, pursuant to the Merger Agreement and Escrow Agreement, on April 22, 2008 and May 15, 2008, Shareholders' Representative provided counter-notices to Defendants and the Escrow Agent that the Shareholders' Representative disputed the indemnity claims. Defendants further admit that because the total estimated value of the indemnity claims exceeded the amount in the Escrow Fund, an effect of the Claim Notice was to prevent the Escrow Agent from making any distributions from the Escrow Fund to Shareholders' Representative until resolution of those claims by an agreement between Shareholders' Representative and Defendants or by order of this Court, except as provided by the Settlement and Partial Release Agreement dated July 9, 2009, between Sage and Silver Point, on the one hand, and Shareholders' Representative, on the other hand (the "Settlement Agreement"). To the extent not expressly admitted herein, Defendants deny the remaining allegations of Paragraph 15 of the Amended Complaint.

16. Defendants admit that, after receiving the claim notices, Shareholders' Representative contacted Defendants' representative to investigate and attempt to resolve the claims. To the extent not expressly admitted herein, Defendants deny the remaining allegations of Paragraph 16, 16(a), 16(b), and 16(c) of the Amended Complaint.

17. Defendants admit that Plaintiff filed this lawsuit in February 2009 seeking relief from this Court; that the parties shortly thereafter submitted to a private mediation session where a representative from Silver Point with authority to settle would attend in person; that, as a

result of the mediation, the parties were able to resolve all of the then-pending indemnification claims except the ARPU Claim and the FCC Claim; and that the Escrow Fund cannot be released while the ARPU Claim and the FCC Claim remain unresolved, except as provided by the Settlement Agreement. To the extent not expressly admitted herein, Defendants deny the remaining allegations of Paragraph 17 of the Amended Complaint.

18.     Defendants admit that the ARPU Claim is based, in part, on information in the data room of documents made available to Silver Point prior to the execution of the Merger Agreement, and that there were several internal Company projections made available to Silver Point prior to the execution of the Merger Agreement. Defendants further admit that the ARPU claim is based on the Company's failure to implement a rate increase in a manner consistent with information provided on the Company's behalf, and that this failure renders certain materials provided on the Company's behalf during the due diligence process materially inaccurate and misleading, thus constituting a breach of the Company's representations, warranties and covenants under the Merger Agreement. In further answer to the allegations in Paragraph 18, Defendants refer to the Merger Agreement for that document's true and complete contents. The remaining allegations in Paragraph 18 are conclusions of law requiring no answer, but, to the extent a responsive pleading is required, they are denied.

19.     Defendants refer to the Merger Agreement for that document's true and complete contents. The remaining allegations in Paragraph 19 are conclusions of law requiring no answer, but, to the extent a responsive pleading is required, they are denied.

20.     Defendants admit that it has been over two years since they acquired the Company, and that the Escrow Fund cannot be released while the ARPU Claim and the FCC Claim remain unresolved, except as provided by the Settlement Agreement. The remaining

allegations in Paragraph 20 are conclusions of law requiring no answer, but, to the extent a responsive pleading is required, they are denied.

21.     The allegations in Paragraph 21 are conclusions of law requiring no answer, but, to the extent a responsive pleading is required, they are denied, because, *inter alia*, the Company has breached its representations and warranties in the Merger Agreement with respect to the ARPU Claim and the FCC Claim.

## FIRST CAUSE OF ACTION
### (Alleged Breach of Contract)

22.     Defendants repeat and incorporate by reference their answers to the allegations contained in paragraphs 1 through 21 of the Amended Complaint as if fully set forth herein.

23.     The allegations in Paragraph 23 are conclusions of law requiring no answer, but, to the extent they may be deemed to be allegations of material fact, they are denied.

24.     The allegations in Paragraph 24 are conclusions of law requiring no answer, but, to the extent they may be deemed to be allegations of material fact, they are denied.

## SECOND CAUSE OF ACTION
### (Alleged Breach of Duty of Good Faith and Fair Dealing)

25.     Defendants aver that no response is required to Paragraph 25 because the Court dismissed this Second Cause of Action at oral argument held on February 4, 2010, as reflected in the Court's order dated February 5, 2010.  However, to the extent any response is required, Defendants repeat and incorporate by reference their answers to the allegations contained in paragraphs 1 through 24 of the Amended Complaint as if fully set forth herein.

26.     Defendants aver that no response is required to Paragraph 26 because the Court dismissed this Second Cause of Action at oral argument held on February 4, 2010, as

reflected in the Court's order dated February 5, 2010. However, to the extent any response is required, Defendants refer to the Escrow Agreement for that document's true and complete contents, and Defendants aver that the remaining allegations in Paragraph 26 are conclusions of law requiring no answer, but, to the extent they may be deemed to be allegations of material fact, they are denied.

27.     Defendants aver that no response is required to Paragraph 27 because the Court dismissed this Second Cause of Action at oral argument held on February 4, 2010, as reflected in the Court's order dated February 5, 2010. However, to the extent any response is required, Defendants aver that the allegations in Paragraph 27 are conclusions of law requiring no answer, but, to the extent they may be deemed to be allegations of material fact, they are denied.

28.     Defendants aver that no response is required to Paragraph 28 because the Court dismissed this Second Cause of Action at oral argument held on February 4, 2010, as reflected in the Court's order dated February 5, 2010. However, to the extent any response is required, Defendants aver that the allegations in Paragraph 28 are conclusions of law requiring no answer, but, to the extent they may be deemed to be allegations of material fact, they are denied.

### THIRD CAUSE OF ACTION
(Alleged Tortious Interference)

29.     Defendants repeat and incorporate by reference their answers to the allegations contained in paragraphs 1 through 28 of the Amended Complaint as if fully set forth herein.

30.     The allegations in Paragraph 30 are conclusions of law requiring no answer, but, to the extent they may be deemed to be allegations of material fact, they are denied.

31.     The allegations in Paragraph 31 are conclusions of law requiring no answer, but, to the extent they may be deemed to be allegations of material fact, they are denied.

## FOURTH CAUSE OF ACTION
### (Alleged Declaratory Judgment)

32.     Defendants repeat and incorporate by reference their answers to the allegations contained in paragraphs 1 through 31 of the Amended Complaint as if fully set forth herein.

33.     The allegations in Paragraph 33 are conclusions of law requiring no answer, but, to the extent they may be deemed to be allegations of material fact, Defendants admit that there is a dispute between Shareholders' Representative and Defendants over the validity and amount of the ARPU Claim and FCC Claim, such dispute is continuing and ongoing, and such dispute is ripe for resolution by the Court.

34.     Defendants admit that Shareholders' Representative is requesting that the Court resolve the dispute by declaring, according to the proofs presented at trial, the amount, if any, that each of the parties is entitled to receive from the Escrow Fund under the Merger Agreement and Escrow Agreement.

## GENERAL DENIAL

35.     Defendants deny each and every allegation of material fact contained in the Amended Complaint not expressly admitted or qualified herein.

36.     Defendants reserve the right to amend their answer to the Amended Complaint as discovery may permit.

## RESPONSE TO PRAYER FOR RELIEF

37.     In response to the Prayer for Relief, Defendants deny that the Shareholders' Representative is entitled to any relief whatsoever; and pray that the Court enter

judgment for SP Sage and Silver Point and against the Shareholders' Representative on the claims made in the Amended Complaint.

## II.     AFFIRMATIVE DEFENSES

### FIRST DEFENSE

1.      Plaintiff's claims fail, in whole or in part, because the Amended Complaint fails to state a claim upon which relief may be granted.

### SECOND DEFENSE

2.      Plaintiff's claims fail, in whole or in part, because the Amended Complaint lacks specificity and otherwise fails to particularize monetary damages requested by Plaintiff.

### THIRD DEFENSE

3.      Plaintiff's claims fail, in whole or in part, because Defendants acted at all times in furtherance of their legitimate economic and business interests.

### FOURTH DEFENSE

4.      Plaintiff's claims are barred, waived, released and/or otherwise foreclosed, in whole or in part, by the terms of the Merger Agreement and by applicable law.

### FIFTH DEFENSE

5.      Plaintiff's claims are barred in whole or in part, or, in the alternative, any recovery by Plaintiff must be reduced or eliminated, on the ground, and to the extent, that Plaintiff has failed to mitigate his alleged damages.

### III.    COUNTERCLAIMS

Silver Point[1] and SP Sage, by and through their counsel, allege as follows for their

counterclaims against the Shareholders' Representative.[2]

### JURISDICTION AND VENUE

1.      These counterclaims are brought pursuant to Rule 13 of the Federal Rules

of Civil Procedure.

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332

because there is diversity of citizenship between Silver Point and SP Sage, on the one hand, and

the Shareholders' Representative, on the other hand, and the amount at controversy exceeds

$75,000, exclusive of interests and costs.

3.      This Court has personal jurisdiction over the parties, and venue is proper

in this district, because the parties have agreed to litigate disputes arising out of and relating to

---

[1] Capitalized terms not otherwise defined within these Counterclaims have the meanings ascribed to them in the foregoing Answer.

[2] Pursuant to Section 6.2 of the Merger Agreement, the former shareholders of the Company (the "Shareholders") are required to severally indemnify the Defendants for the Company's breaches of its representations and warranties to the extent that the Escrow Fund (defined below) is not available. Accordingly, Defendants reserve their rights to seek joinder of the Shareholders to this lawsuit and to assert claims against them. The Shareholders as defined in the Merger Agreement include: Dennis M. Houlihan, The Walden Group, Inc., Bruce S. Johnson, Beth E. Johnson, Norman N. Green, Robert C. Connor, Gerald R. Szczepanski, Don R. Daseke, Jerry L. Gimnich, Christopher M. Williams (in his individual capacity), Cheryl C. Williams, Gary P. Nuttall, John P. Allen, Barbara Daseke, James E. Kennedy, Nancy A. Kennedy, Five J-CTMS, Ltd., Larry W. Carter, Atley Davis, Jr., Russell L. Clarkson, Paul A. Griffin, Kimberly J. Griffin, Robert J. Lindquist, Ann Kennedy, John H. Richardson, Lynda S. Richardson, James M. Houlihan, Adam L. Green, Edward M. Guerra, Connie F. Guerra, Howard M. Green, Toby A. Szczepanski, Jacob R. Szczepanski, Robert J. Riordan, Bruce Johnson as Trustee for the Lance S. Wiedner Trust, Bruce Johnson as Trustee for the Allison M. Johnson Trust, Bruce Johnson as Trustee for the Bret R. Wiedner Trust, Bruce Johnson as Trustee for the Ashley J. Johnson Trust, Bruce Johnson as Trustee for the Drew P. Wiedner Trust, Bruce Johnson as Trustee for the Will K. Tanigaki Trust, Cheryl Green Ockrant, David P. Gimnich, K. P. McNeill, Michelle Peters, Lisa Riley, Jacob R. Szczepanski as Custodian for Wesley Peters under the Texas Uniform Transfer to Minors Act, Jacob R. Szczepanski as Custodian for Josh Peters under the Texas Uniform Transfer to Minors Act, Jacob R. Szczepanski as Custodian for Jett Platt under the Texas Uniform Transfer to Minors Act, Jacob R. Szczepanski as Custodian for Riley Platt under the Texas Uniform Transfer to Minors Act, Jacob R. Szczepanski as Custodian for Ryan Maxwell Szczepanski under the Texas Uniform Transfer to Minors Act, Jillian Pardee, Shirley M. Smalling, Ruth Ann Sommer, Andra C. Farley, Jordan Ockrant, Matthew Ockrant, Bradley Ockrant, Brandon Green, Bryan Garrett, Nicole M. Taha, Deborah G. Hamm, and Carole F. Tuma.

the Merger Agreement in this district.

## PARTIES

4.      <u>Silver Point</u>.  Silver Point is a Delaware limited partnership with a principal place of business in Connecticut.  It is a privately owned investment partnership.

5.      <u>SP Sage</u>.  SP Sage is a Delaware limited liability company, with a principal place of business is in Connecticut.  SP Sage is a portfolio company of Silver Point, and is the parent of the Company, which provides local phone service, nationwide long distance, and high-speed internet services to just under 200,000 customers in eleven states.

6.      <u>The Shareholders' Representative</u>.  Christopher M. Williams is the Shareholders' Representative, as defined in the Merger Agreement (defined below).  Pursuant to section 2.17(h) of the Merger Agreement, the Shareholders' Representative is empowered to receive service of process for the Shareholders in connection with this matter.  Upon information and belief, as alleged in the Amended Complaint, the Shareholders' Representative resides in Texas.

## FACTUAL ALLEGATIONS

**A.**      **The Merger Agreement and the Transaction**

7.      On or about December 31, 2006, Silver Point, the Company, and the Shareholders' Representative entered into the Merger Agreement.  Pursuant to the terms of the Merger Agreement, Silver Point acquired all of the then-outstanding shares of the Company for approximately $48 million dollars (the "Transaction"), and Christopher M. Williams was appointed as "Shareholders' Representative" to represent the interests of the Shareholders of the Company.

8.      Specifically, the Transaction was effected pursuant to the Texas Business

Corporation Act and involved the merger of SP Sage Merger, Inc., which was a specially-created subsidiary of SP Sage, with and into the Company, with the Company being the Surviving Corporation. Silver Point assigned its rights and obligations under the Merger Agreement to SP Sage.

## B.  **The Indemnification Claims**

9.  After entering into the Merger Agreement, the Defendants discovered that a host of representations and warranties made by the Company in the Transaction documents were false.

10.  The Merger Agreement requires the Shareholders to indemnify SP Sage and Silver Point for the Company's breaches of its representations and warranties therein. In order to facilitate indemnification of Silver Point and SP Sage by the Shareholders, the Merger Agreement calls for a certain Escrow Fund consisting of approximately 10% of the purchase price — or $4.8 million — to be established. To the extent the Escrow Fund is not available, and subject to certain limitations, the Merger Agreement requires the Shareholders to severally indemnify SP Sage and Silver Point.

11.  In April 2008, SP Sage and the Surviving Corporation submitted notices of claims (the "Claim Notices") seeking indemnification for the Company's breaches of its representations and warranties in the Merger Agreement, as described herein. Specifically, SP Sage and the Surviving Corporation submitted five claims for indemnification pursuant to the Merger Agreement (the "Indemnification Claims"). The Shareholders' Representative subsequently submitted counter notices (the "Counter Notices") disputing the right to indemnification.

## C. SP Sage's and Silver Point's Good Faith Efforts to Amicably Resolve the Indemnification Claims

12. After receiving the Shareholders' Representative's Counter Notices, SP Sage and Silver Point endeavored in good faith to work with the Shareholders' Representative towards an amicable resolution of the Indemnification Claims. In this regard, representatives with full negotiation and settlement authority on behalf of SP Sage and Silver Point met with the Shareholders' Representative on several occasions and exchanged information regarding the nature of the Indemnification Claims. However, the Shareholders' Representative, apparently upset that the settlement negotiations were not going sufficiently his way or according to his desired timetable, filed the above-captioned lawsuit. Despite SP Sage's and Silver Point's efforts to seek indemnification in accordance with the Merger Agreement and Escrow Agreement and amicably resolve the disputes, the Shareholders' Representative accused SP Sage and Silver Point of having breached the Merger Agreement and the Escrow Agreement for seeking indemnification for the Company's breaches of its representations and warranties.

13. Despite having been sued by the Shareholders' Representative, SP Sage and Silver Point remained willing to negotiate a fair resolution of their Indemnification Claims. Therefore, the parties submitted to private mediation in Dallas, Texas on April 24, 2009. Representatives with full negotiation and settlement authority on behalf of SP Sage and Silver Point attended the mediation in person. Although no amicable resolution was reached at the mediation, in the wake of such mediation, SP Sage and Silver Point continued negotiations with the Shareholders' Representative towards amicable resolution. In July 2009, these negotiations led to the resolution of three out of the five Indemnification Claims.

14. The parties engaged in a second round of mediation in Dallas, Texas on February 10, 2010. Representatives with full negotiation and settlement authority of SP Sage

and Silver Point attended the mediation, either in person or by telephone. The mediation was unsuccessful.

15.     Thus, SP Sage and Silver Point have two currently pending Indemnification Claims resulting from the Company's breaches of its representations and warranties in the Merger Agreement: the ARPU Claim and the FCC Claim, as described below.

## D.     The ARPU Claim

16.     The "ARPU Claim" arises out of the Company's failure to implement changes in rates that it charged customers in a manner consistent with information provided on the Company's behalf to Silver Point during its consideration of the Transaction.

17.     While Silver Point was performing due diligence of the Company and evaluating whether to enter into the Transaction, the Company and its advisors represented to Silver Point that the Company was in the process of raising the rates that the Company charged to all of its customers.

18.     Consistent with that representation, the Company and its advisors provided Silver Point with business models and an information memorandum in which the Company represented that average revenue per user ("ARPU") would rise to $49.00 for fiscal year 2007 as a result of the purported rate increase to all customers. ARPU measures the average revenue stream from each customer, and, coupled with the number of customers a company has, is a significant indicator of the future revenue of a company. As a result, the Company's representations that it was raising the rates that it charged to all customers so that ARPU would rise to $49.00 were heavily relied upon by Defendants when evaluating the value of the Company.

19.     In early 2007, SP Sage and Silver Point learned that, contrary to the

Company's representations, the Company had increased the rates charged to some, but not all, of its customers, and that ARPU did not rise to the levels represented by the Company.

20.     The Company's failure to raise rates as represented, and the resulting failure of ARPU to reach $49.00 for fiscal year 2007, rendered the information provided by the Company and its advisors materially inaccurate and misleading.

21.     The foregoing constitutes a material breach of the representations and warranties made by the Company in the Merger Agreement, including, without limitation, pursuant to Section 3.31:

> Neither this Agreement nor any certificate, report, document or written statement furnished or made available to the Buyer by or on behalf of the Company in connection with the transactions contemplated by this Agreement or any of the Transaction Documents [including the Disclosures] contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained herein and therein, in light of the circumstances under which they were made, not misleading.

22.     As a direct and proximate result of the Company's breaches of the representations and warranties in the Merger Agreement through its failure to increase rates consistent with representations made by and on behalf of the Company, SP Sage and Silver Point have suffered damages.

## E.     The FCC Claim

23.     On April 22, 2008, the Company received a letter from the Federal Communication Commission's ("FCC") Enforcement Bureau, informing it that the FCC was investigating the Company and its subsidiaries for alleged violations of the FCC's rules governing the low-income support mechanism of the federal universal service fund, during the period from October 2004 to the present.

24.     The nature of the FCC's investigation was initially very broad, and involved a range of regulatory obligations and services. However, over the course of many months, SP Sage and Silver Point have been able to negotiate with the FCC a narrowing of the scope of its investigation to the Company's allegedly incorrect processing and reporting in regard to Lifeline services. Lifeline is a government-subsidized program through which qualified customers (usually low-income or rural households) receive a discount on monthly charges for their primary home line, with the goal of furthering certain public interest goals, such as providing access to emergency services, medical providers, social service agencies, and schools.

25.     The FCC's investigation, in sum, focuses on the Company's submission of inaccurate information regarding its Lifeline services on reporting forms to the Universal Service Administrative Company, which administers reimbursements to telephone companies under the Lifeline program, in violation of FCC regulations.

26.     The existence of the foregoing alleged violations constitutes a material breach of the Company's representations and warranties in the Merger Agreement, including, without limitation:

  a. Section 3.16, which provides, "[e]xcept as set forth in Schedule 3.16(c)(i) . . ., (ii) the Company Group is in material compliance with, and the conduct of the Business has been and is in compliance in all material respects with, the Communications Act and applicable telecommunications Laws of the U.S. states and territories . . ."; and

  b. Section 3.17, which provides, "the Company Group, the operation and conduct of the Business as and where such Business has been or is currently conducted and currently contemplated to be conducted, and the ownership, possession and use of the Assets has been and is in compliance in all material respects with all applicable Laws and Judgments."

27.     As a direct and proximate result of the Company's alleged non-

compliance with FCC rules and regulations, which non-compliance constitutes a material breach of the Company's representations and warranties in the Merger Agreement, SP Sage and Silver Point have suffered damages.

**F.      Conditions Precedent**

28.      All conditions precedent to this action have occurred or have been waived, including, without limitation, Defendants' compliance with the terms of the Merger Agreement.

**FIRST COUNTERCLAIM**
(Breach of Contract)

29.      Defendants repeat and reallege the allegations contained in paragraphs 1 through 30 of these Counterclaims as if fully set forth herein.

30.      The Merger Agreement is a valid, enforceable contract, which expressly requires the Shareholders to indemnify SP Sage and Silver Point for the Company's breaches of its representations and warranties. The Shareholders' Representative is empowered to act in the stead of the Shareholders for all purposes relevant to this matter, including with respect to their indemnification obligations. Therefore, the Shareholders' Representative is a proper party to sue for the Company's breaches of the Merger Agreement.

31.      Defendants have performed, tendered performance of, or have been excused from performing their contractual obligations under the Merger Agreement.

32.      The Company has breached its representations and warranties in the Merger Agreement.

33.      The Company's breaches have directly and proximately caused damages to Defendants, for which damages Defendants seek recovery from Shareholders, by and through the Shareholders' Representative.

## SECOND COUNTERCLAIM
### (Declaratory Judgment)

34. Defendants repeat and reallege the allegations contained in paragraphs 1 through 35 of these counterclaims as if fully set forth herein.

35. The controversy between the parties concerning the validity and value of the ARPU Claim and FCC Claim is continuing and ongoing, and is ripe for resolution by the Court.

36. Defendants respectfully request that the Court resolve this controversy by declaring that Defendants are entitled to indemnification, in an amount to be determined at trial, for the FCC Claim and the ARPU Claim.

## PRAYER FOR RELIEF

WHEREFORE, SP Sage and Silver Point respectfully request that that Court enter judgment in SP Sage's and Silver Point's favor and against the Shareholders' Representative as follows:

    a. On the First Counterclaim, in an amount to be determined at trial;

    b. On the Second Counterclaim, declaring that SP Sage and Silver Point are entitled to indemnification from the remaining balance of the Escrow Fund, in an amount to be determined at trial, for the FCC Claim and the ARPU Claim;

    c. Awarding SP Sage and Silver Point their reasonable attorney fees, expenses and costs; and

    d. Awarding such other and further relief as the Court deems appropriate.

Dated: New York, New York
February 18, 2010.

/s/ T. Ray Guy
_____

T. Ray Guy, *pro hac vice*
Texas Bar No. 08648500
ray.guy@weil.com
Margaret Hope Allen, *pro hac vice*
Texas Bar No. 24045397
margaret.allen@weil.com
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas  75201
(214) 746-7700 (Telephone)
(214) 746-7777 (Facsimile)

Randi W. Singer (RS-6342)
randi.singer@weil.com
Heather R. Solow (HS-8680)
heather.solow@weil.com
Eric C. Hawkins (EH-4519)
eric.hawkins@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
(212) 310-8000 (Telephone)
(212) 310-8007 (Facsimile)

**ATTORNEYS FOR SILVER POINT CAPITAL
FUND, L.P. AND SP SAGE LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of February, 2010, I electronically transmitted the foregoing document using the ECF system for filing and transmittal of a Notice of Electronic Filing to those parties registered for ECF in this case.

Eric C. Hawkins